Good morning, and may it please the Court. Erica Shilmer for the petitioner Rosa Jimenez-Gudino, who reserves three minutes for rebuttal. Manage your own time. Thank you. The facts in this case are not in dispute. Ms. Jimenez is before the Court because she has sufficient evidence to prove that her father was physically present in the U.S. for ten years prior to her birth, and therefore she can establish that she is a U.S. citizen. She has raised various legal issues on appeal, and we'd like to address the two most important. First, whether she's entitled to a de novo hearing before a district court on the issue of citizenship, and second, whether her claims are barred by collateral estoppel. Ms. Jimenez contends that she is entitled to a de novo hearing on the issue of citizenship, and this case should therefore be transferred. Also, she contends that collateral estoppel does not bar her claims. The statute enacted by- The question really is whether we apply title or not, right? Correct, Your Honor. That's one of the most fundamental questions. And title is the controlling law in this circuit, and we know that the- What we call a time-honored case. Yes, and we're asking the Court to apply that time-honored case and not find that the prior criminal proceedings is a determination on her alienage, although that was an issue. And the respondent cites to Fedorenko, which is a board case, and argues that that's the case and that this Court essentially should now reverse title. Well, Fedorenko cited title. It did. So, go ahead. And I think the agency, because it's dealing with this general issue of collateral estoppel, which is not addressed in the Immigration and Nationality Act, this Court doesn't have to give deference to the board's decision in Fedorenko. This Court is in a better position to make a legal determination about the general application of collateral estoppel in immigration proceedings. Well, we're bound by our own precedent. The only question is whether title is on all fours of this case. You think so, even though there's slightly different provisions of the Code involved, right? There are slightly different provisions, and we actually think that the statutory provision in this case is one of the most important reasons why collateral estoppel shouldn't apply. We're looking at 8 U.S.C. 1252. That provides the special right to have a de novo evidentiary hearing in district court. There's no other kind of immigration case where a person can petition for review of this court and get a chance at an evidentiary hearing in a federal district court. And the Supreme Court in Augusto, looking at this statutory provision, when it said a court of appeals shall not deny an individual de novo hearing, it looked at what the statutory or the congressional intent behind creating that statute and reasoned that basically Congress wanted to have or found the need to create a special provision for people claiming citizenship to have a de novo hearing because this is the most fundamental right. If Ms. Jimenez is, in fact, a U.S. citizen by birth, then the agency doesn't have jurisdiction over any of this. And so the fact that there is this special statutory provision, we believe, trumps the general principle of collateral estoppel. And going back to the other cases that apply, and unfortunately this is an issue, this issue of whether collateral estoppel can apply with respect to a de novo hearing under 1252 has not ever been reached, and so it is a novel issue. And we do concede that the facts are a bit different in this case than Title, which was a denaturalization case. However, I would point out that in Title the court was looking at whether denaturalization proceedings in district court could be used to bar presenting evidence in immigration court. In this case, again, we have two distinct proceedings. We have criminal proceedings in the illegal reentry case, and now she's before the agency. Another rather novel, I guess, situation in this case is that this issue of collateral estoppel was not raised by the agency below. We're addressing it because this court raised it. And so in a lot of the other denaturalization cases, they read as if the agency in immigration court presented the district court decisions to say, here's our evidence of alienage. What would she present at a de novo hearing that wasn't presented in the other proceedings? That's an excellent question, Your Honor. What do we get paid to do? So before the criminal court, what we can surmise from- I'm asking for a list. Okay, so the list. No wind-up, no preparatory statement, a list. These are the things that we would present at a de novo hearing that we are unable to present in the prior proceedings. One. Testimony from her aunt, which was not presented in the criminal proceedings. Testimony from a different cousin. One cousin testified. It appears in the criminal proceedings, but there is a different cousin. A copy of some documents, a Social Security card from her father and his application, which shows he was living in Chicago. His income tax return from 1953. A letter from the Railroad Retirement Board indicating that he was employed again in Chicago in 1953. Those are the documents and the witnesses that, based on the record we have- But not a birth certificate. Oh, the birth certificate, yes. The birth certificate was-I believe it's not specifically mentioned in the criminal proceedings, but I believe her father's birth certificate and his baptismal certificate were available in the criminal proceedings. It's my understanding. Again, I don't have that entire record. The question is that she was born in the United States? No, no, sorry. I'm talking about her father's birth certificate. So the reason- She was born in Mexico. The only question is the length of time her father spent in the United States. That's exactly right. And the particular period of time that's of concern is under the section of the statute, he had to have been physically present 10 years, but 5 of those 10 had to be after the age of 14. And so it's those years prior to Ms. Jimenez's birth. So 1953, 1950, 1951, those are the crucial years because at this point, the evidence seems fairly clear that he was born in the U.S. and his family went back to Mexico when he was about 10 or 11. So the first 5 are good. It's these later 5, and that's why that evidence, again, the cousin who was present in Chicago in the early 1950s when her father was working for the Railroad Commission is so important because it's evidence that it appears in the criminal proceedings was not available to her. In the criminal proceedings, we know that the court heard testimony from the USCIS officer that examined her mother on the N-600 application and received testimony of her mother and one other cousin. Does the evidence that she is going to present, if she gets an overview, get you those 5 years or does it just get you part of the way? Your Honor, we believe that it does get us the 5 years. Basically, my client's aunt would testify about my client's father's travels to the U.S. and essentially from 1944 until 1953, he was in the U.S. for approximately 6 to 9 months each of those years, working some of the time in Chicago with the railroad, some of the time in California doing agricultural work. And this was somebody who did not testify in the 1326 prosecution? Correct. She did not testify in the 1326 prosecution, again, based on my review of the documents in that case. And we believe that this evidence is significant, and there is case law to support the finding that collateral estoppel shouldn't apply when there is evidence that was not reasonably available to the person in prior proceedings. And this Court's decision in Oyenaran is significant in that case. That was a Convention Against Torture case. And what the Court said is that it's not sufficient that the evidence existed in the world. It must have been reasonably available to the petitioner at the time of the prior proceedings. In this case, we concede because all of this evidence is evidence of things that happened before Ms. Jimenez was born. Clearly it existed in the world. But at the time, Ms. Jimenez's father, unfortunately, is dead, so he would be the best witness. He has not been available in any of these proceedings. And so the question is, what's reasonably available to a person who's looking for evidence, all of which happened before she was born? These cases are very, very difficult because it includes gathering evidence for things that happened before the person who's most interested could have any personal knowledge of it. And matter of compost, sorry, going back to Oyenaran, one of the factors that the Court found significant in that case was that the petitioner in that case was detained at some point during the proceedings, and so a warrant was issued for his arrest in his home country. He was unaware of it until a later date, and the Court found that that was significant because though it existed in large, he wasn't able to present it, of course, because he didn't know of its existence until a later time. Likewise, when Ms. Jimenez was in her 1326 proceedings, she was detained. It looks from the record that it took about 11 months for her to go to trial. Certainly that's a significant amount of time to prepare, but today we're seven years later, and additional documentation has been pieced together through these other, through the help largely of an aunt and some other family members who have been able to gather additional evidence. I think we have your argument in hand. Do you want to reserve some time for a bottle? Yes, Your Honor. Very good. Thank you. Good morning. May it please the Court, my name is Paul Stone, and I represent the Respondent Attorney General in this case. I'd like to jump into it briefly and start with the new evidence exception. There is no new evidence exception to issue a preclusion. The cases that Ms. Jimenez rely on don't address that issue. The unpublished case she cites, Lopez-Basante, involves a change in law. Aren't we bound by title? Title? Your Honor, yes, this Court is bound by title, but title doesn't say what Ms. Jimenez thinks it says. Title merely holds that an alien may provide evidence at a removal hearing. It doesn't prevent the application of issue preclusion to a particular issue, such as alienage. The reason what the case in title said was it would be unfair to apply it in this particular case. What's your best Ninth Circuit case to support your claim of application of collateral estoppel? Oyerinan, I believe, is the best, which is ironic because I believe Ms. Jimenez thinks it's her best case as well. But that case says very clearly that issue preclusion, collateral estoppel, applies to immigration decisions. And it also says that new evidence, it says clearly new evidence is not an exception to claim preclusion. Right, but here's the odd thing, is that if you take Fedorenko cites title and it says, well, the question is whether it would be unfair to allow issue preclusion. And title, I think, stands for the same proposition. So here the government has conceded that there are genuine issues of material fact about whether or not the father has spent the requisite time in the United States. At least as I read your brief, you concede that if you don't want us to decide that in the first instance, you think there are disputed issues that should go to a fact finder. So if the government has conceded that there are genuine issues of material fact about this, why is it fair under title or Fedorenko to apply issue preclusion when we know that there are genuine issues of fact? Well, because Ms. Jimenez has had a number of opportunities to make these claims and to provide evidence dating back to 1973 when her father was still alive, when she was placed in removal proceedings. She sought 212C relief instead of claiming that she was a citizen. It wasn't until 2004, I believe, that she first started making the claim.  Let's assume that she can prove her case, just hypothetically. Okay. So why is it fair to say she's denied citizenship because she failed to develop the record in a different proceeding many years ago? If it's true and if the government concedes there are genuine issues. Your Honor, I think if she were clearly a citizen, we would be approaching this in an entirely different way. If the record showed she was clearly a citizen, my guess is we would have resolved it before it ever got here. Nobody wants to deport a citizen. That's not what any of us signed up to do. Why not have a full and fair hearing in district court? You think there's no basis for the claim? She thinks there is. That's why we have district judges. Right. Well, Your Honor, she did have that in the criminal trial. And the reality is if issue preclusion is to mean something, that means that's her chance to provide all her evidence. She provided a great deal of evidence. I thought the law of this circuit in criminal cases was that collateral estoppel did not apply. That's correct, Your Honor. But this is collateral estoppel not applying to a criminal case. It's the decision of the criminal case applying here. If she were charged again with 1326, collateral estoppel would not apply. Well, then there would be a double jeopardy issue at that point. Oh, no. I mean a new 1326. A new 1326. Your Honor, I do civil law, so I can't give an accurate answer to that. She'd get to present a full defense at that point. I imagine so, but that's a criminal case. Has the government taken an independent look at this new evidence that she wants to present if she were granted a de novo review to assess independent of collateral estoppel what the legal issues are, but to assess factually whether the new evidence gives her the five years that she's missing? Yes, Your Honor, because as Ms. Jimenez's counsel pointed out, the board and the IJ didn't rely on issue preclusion in making this decision. It relied on looking at the actual evidence in the case here. And, in fact, the only reason we're maintaining that this court can consider it is because there is still issue preclusion between the Ninth Circuit Court of Appeals and a prior decision in the Ninth Circuit Court of Appeals. So regardless of whether it's brought up in the agency, it remains an issue here. But the agency didn't consider issue preclusion. It considered the merits of the claims and determined that it still didn't get her there. But as we pointed out in the brief, ultimately, if the court decides issue preclusion doesn't apply, the agency's decision is irrelevant because it would go to a district court for another de novo hearing. And the government expects it to prevail at that hearing. Otherwise, you wouldn't be here. I believe so. I mean, but you don't know. You can say they're genuine issues, but, you know, as you said, you don't want to deport a citizen. If you were convinced, I expect you would have settled it already.  I mean, if I were convinced, I wouldn't even ask for it. So what are you afraid of? I'm sorry, Your Honor? So what are you afraid of? You know, if it turns out she's a citizen, then justice is done. And if you win? Because, Your Honor, she already had a trial. And, you know, trials are expensive, and other people want justice, and other people want to appear in court. But going back to title, the reason title didn't apply, issue preclusion there, is because there was a change in law, which is recognized exception to issue preclusion, and because he didn't testify or present any evidence on his own behalf in the denaturalization proceeding. But under your theory of opportunity to present evidence, that shouldn't make any difference, should it? I mean, your theory is she had the opportunity to present evidence and didn't present this evidence, therefore she shouldn't be able to present this evidence now. How is that really different from title, where he didn't put on any evidence? Well, because in title there was also a change in law, which allowed him to raise new defenses to the claims, which may have meant he may have chosen entirely different tactics in that denaturalization proceeding, because maybe he didn't put on evidence because he couldn't have prevailed under the old law, but now he could. There's no change in law here. There is no change in evidence. The facts are all as they were before. All there is here is continuous discovery of evidence. And as we know from the immigration process, it's fairly easy to keep finding new evidence and keep filing motions to reopen. At some point, the courts have to say, you've had your opportunity to prove it and you haven't. She had an opportunity when she filed her affirmative application for citizenship. She also had her opportunity in the criminal proceedings. But the difference on a motion to reopen, obviously there are time and other number of bars, is that the BIA assesses whether or not, assuming it's a timely file and it's not time bar, the BIA assesses whether there's enough there to create an issue of fact that ought to be explored. And here the government's conceded that they're genuine issues. So theoretically, if this were before the BIA, it would meet the test of the BIA for reopening. Well, not necessarily, Your Honor. The government's made that concession because... Because you don't want her to sign it in the first instance. Well, no, there's a very... We don't think that it's been established. We don't think there's even a prima facie case because she hasn't established for all five years. But there is enough of an... In our view, if the court were to take it on, it should decide in the negative. But because there is enough scintilla there, it ought to go to the district court if the court decides that issue of preclusion shouldn't apply. So essentially new evidence is not an exception to claim for preclusion. Exceptions are a change in law, a change in facts. That's about the third time we've heard that. Do you have anything else? Your Honor, I think that's largely what we need to say here. And you've briefed the issue adequately. Thank you, Your Honor. In short, I believe the court understands her arguments. Everything that we've brought up is in the brief. I would like to point out that we didn't address the argument that she was denied due process below because ultimately it's irrelevant. But I would like to point out that she did have notice that she could provide evidence and cross-examined witnesses when she received the notice to appear. Unlike most aliens, she speaks English, so she was put on notice of that. She also had assistance of counsel in preparing a motion to terminate. When she was represented by counsel, the immigration judge told her she could still present evidence of citizenship and have a hearing on the issue even after the motion had been denied. That was at page 188 in the transcript. And when proceeding per se, the immigration judge even permitted her to introduce more evidence after the initial motion had been filed. So in sum, Your Honor, issue preclusion applies here. None of the exceptions apply here. So the appropriate thing for the court to do is to deny the petition for review. Okay. Thank you, counsel. Other way. Your Honors, we believe that the two issues that have been raised with the respondent are the issue of fairness and whether or not she really has had a hearing before the agency. And in this case, we argue that it would not be fundamentally fair to her to apply collateral estoppel in this instance because, again, we're dealing with this most fundamental right of citizenship. And if we follow what the respondent's advocating for, it means that no matter how much evidence Ms. Jimenez has today, she shouldn't be allowed to have a hearing, which would mean effectively that she would not be able to enjoy the rights of citizenship for the rest of her life. And that's a situation that we don't believe any of the case law can support, that a person could be denied that most fundamental right. These cases are very difficult because they come down to can you prove you're a citizen. We're arguing that she's been a citizen since birth. Unfortunately, we assume her parents did not know that in 1955 when they brought her here that they could have done an application to have her recognized as a citizen. These provisions of the automatic benefits of transmitting citizenship are obscure. It's changed over time, and instead her family applied for permanent resident status for her. And it's true that she did not make her first attempt at getting documented or proving that she was a citizen until 2004. She did make an application. The M-600 application was denied. I would note that while she did appeal it, that administrative appeal was denied after her attorney did not file a brief. The next attempt that she had was during the criminal proceedings that we've discussed. And before the immigration judge, I do take issue with the respondents saying that because she had the notice to appear, she was advised of her right to present evidence and, most importantly, testimony. I think the key issue in this case is that there are some inconsistencies with her mother's statements that were made in the original M-600 proceedings and subsequent affidavits. The best way to be able to evaluate that evidence is by hearing testimony. And the immigration judge never gave her that opportunity. Ms. Jimenez was pro se. She filed the motion to terminate. The government responded by filing an objection and filing a bunch of evidence. Before a hearing was held, the immigration judge denied the motion in writing. Then Ms. Jimenez submitted more evidence in writing. The government again opposed. The immigration judge, again, without having a hearing, denied it in writing. And when she got pro bono counsel in her case, basically the case changed and they went to pursuing a U visa application, which was ultimately denied. All we're asking for is for Ms. Jimenez to have her day in court, to be able to present this evidence and get an adjudication about whether or not there is enough physical presence for her to be able to be recognized finally as a U.S. citizen and return to this country where she's lived since she was less than two years old. For that reason, we are requesting that this court transfer the case to a district court so that she can have a determination on citizenship. If there's an issue in the alternative about whether some of this evidence was reasonably available to her in prior proceedings, we would ask for remand because, again, because that issue was raised here, it wasn't something that was addressed below and there was no evidence taken below about the availability. Thank you, Counselor. Thank you both for your arguments. The case, as heard, will be submitted for decision.
judges: Hawkins, Thomas, Nguyen